SHELDON, Appellant, vs. THE HEKLA FIRE INSURANCE COMPANY, Respondent.

*February 23 — March 16, 1886.*

*Fire insurance: Contract to insure: Revocation before acceptance.*

An insurance agent agreed to insure plaintiff's house, on certain specified terms, in some company represented by him, but not designated. The defendant, one of those companies, decided to insure the house on entirely different terms; but before the plaintiff was informed thereof the company determined not to take the risk. *Held,* that there was no contract by defendant to insure.

APPEAL from the Circuit Court for *Winnebago* County.

This action was brought to recover damages for the breach of an alleged contract on the part of the defendant company, entered into by one Bradt, its agent, on November 17, 1884, to insure the dwelling-house of the plaintiff, in Omro, " against loss or damage by fire for the period of three years from said date, in the sum of three hundred dollars, in consideration of which this plaintiff agreed to pay and has paid to said defendant the sum of three dollars and seventy-five cents premium." The dwelling-house was totally destroyed by fire, November 21, 1884. The defendant denies that it made the alleged contract or received any premium from the plaintiff. A sufficient statement of the

testimony will be found in the opinion. Plaintiff appeals from a judgment of nonsuit.

For the appellant there was a brief by *Houghton & Haddock*, and oral argument by *Mr. Houghton*. To the point that the fact that the company in which the insurance shall be placed is left discretionary with the agent is not material, provided he has in fact decided in what company to place the risk before a loss occurs, and that an entry in his register is conclusive upon the company in which he determines to place the risk, they cited Wood on Fire Ins. secs. 8, 25; *Ellis v. A. C. F. Ins. Co.* 50 N. Y. 402; *Vilas v. N. Y. C. Ins. Co.* 72 id. 591–93; *Massasoit Steam Mills v. West. Ass. Co.* 125 Mass. 110.

*J. H. Carpenter*, for the respondent.

LYON, J. The controlling question is, Did the defendant company contract with the plaintiff to insure his building, as charged in the complaint? The testimony of the plaintiff as to the making of the alleged contract is as follows: "About the 17th of November, I had a conversation with M. G. Bradt about insuring this building. I went to Mr. Bradt and asked him if he wouldn't insure my house. He said he would. I told him I wanted it insured for three years for $300. He said he would. I asked him how much? $3.75. . . . He said he would insure it. I told him to make out the policy, and I would pay him for it. . . . He didn't say anything in reference to the payment of the premium." It appears that Bradt was the general agent of the defendant, and also of another fire insurance company; but it does not appear that the plaintiff knew what companies he represented, or even that there was such a company as the defendant, or that anything was said as to the company which was to take the risk. There was some other testimony which tends to show that the agent, Mr. Bradt, waived the immediate payment of the premium. No pre-

mium was ever paid to the defendant, but several weeks after the fire the plaintiff offered to pay the premium to Mr. Bradt. The latter refused to receive it, and thereupon the plaintiff left it on the counter in Mr. Bradt's place of business.

Conceding that a contract was made between the plaintiff and Mr. Bradt by which the latter agreed to insure the plaintiff's house in one of the companies represented by him; that it was left to the agent to select the company which should take the risk; that the term of three years and the premium of $3.75 were agreed upon; and that payment of the premium as a condition precedent to the validity of such contract was waived,— still such contract would not be the contract of the defendant, and could not bind it, until the agent should in some manner designate the defendant as the party for whom he contracted. Until that time an action on the contract to insure might with equal propriety have been brought against any other company represented by Mr. Bradt.

We have, therefore, this question: Did Mr. Bradt designate the defendant as the company for whom he made the contract to insure plaintiff's buildings? On November 20th, being the day before the house was burned, Bradt made an entry in the register or record of daily reports of the defendant, kept by him, as follows: "No. 81. *Henry Sheldon*, November 20, 1884, 12 months. Expiration, Nov. 20, 1885. $300. Rate $1.25,— $3.75. $300 on his two-story, frame, shingle roof dwelling," etc. This refers to the dwelling which was burned. He also filled up and countersigned a policy of insurance in the defendant company, in accordance with such entries. On the next day (probably before the fire) he wrote in the same register: "Risk rejected by the company;" also, "Not written up, by order of the company." At the same time he sent the policy to the company. In all this the agent acted on his own judg-

ment, without directions from the company. The plaintiff had no knowledge of the above acts of Mr. Bradt until after his building was burned. Should it be assumed that there was a designation by Bradt of the defendant as the company which should take a risk upon plaintiff's house, there still remains an insurmountable obstacle in the way of a ruling that such designation was effectually made. The entries in the register, and the policy made by Bradt, do not accord with the contract to insure. The company, acting through its agent, has never agreed to insure the plaintiff's house for three years, at a premium of $1.25 per year. The most it did was to offer to insure the building for one year for $3.75. That proposition was withdrawn before acceptance, and hence the minds of the parties never met in assent to its terms.

Stated most favorably to the plaintiff, the substance of the transaction is this: Bradt agreed to insure the plaintiff's house, on certain specified terms, in some company represented by him, but not designated. The defendant, being one of those companies, decided to insure the house on entirely different terms; but before the plaintiff was informed thereof (and of course before any acceptance) the company determined not to take the risk. That was an end of the matter. No case is cited in which a recovery has been upheld under such circumstances. It necessarily results from these views that the defendant never became a party to the alleged contract to insure plaintiff's house, and hence is not liable in this action. We conclude that the nonsuit was properly ordered.

*By the Court.*— Judgment affirmed.