RUSSELL and another, Appellants, vs. THE FALLS MANUFACT-URING COMPANY, Respondent.

*March 3 — March 20, 1900.*

*Sale of chattels: Contract: Acceptance.*

1. On May 27th, plaintiffs' agent took from defendant an order for flour, subject to plaintiffs' approval, "to be shipped out any time between now and July 1st, when ordered by" defendant — "terms, thirty days from shipment." On the same or the next day plaintiffs re-plied by letter accepting the order but specifying, as the terms, that the flour was "to be shipped some time in June . . . on thirty days acceptance without interest, and if longer time wanted eight per cent. interest after thirty days." *Held*, that this was a mate-rial modification of the terms of the order, and therefore consti-tuted a new offer, not binding on the defendant until accepted.

2. In such a case, mere silence on the part of the vendee after receipt of the vendors' response could not be construed as an acceptance of their modified proposal.

APPEAL from a judgment of the circuit court for Outaga-mie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

On May 27, 1898, plaintiffs' traveling salesman took a written order from the defendant in the following words: "Oconto Falls Manufacturing Co.: Bought of Russell Bros. one car of flour, to be shipped out any time between now and July 1st, when ordered by the Oconto Falls Mfg. Co. Terms, thirty days from shipment. [Descriptions and quantities.] Subject to the approval of Russell Bros., and they are to notify the Oconto Falls Mfg. Co. at once if they accept of order. Falls Mfg. Co., W. L. E." On the same or the next day plaintiffs replied by the following letter: "Your order received, given our Mr. Parish, and will accept same, to be shipped some time in June, 1898. We suppose Mr. Parish gave you our terms,— all goods sold on thirty days' acceptance without interest, and if longer time wanted eight per cent. interest after thirty days. (All acceptance dated same day as invoice & B. L.) to be signed and returned as soon as car is unloaded." No response was made until June 10, 1898, when the defendant sent the following: "Please cancel our order for flour, which was to come in some time this month, as we have decided to continue buying the same flour we have been using. We are informed that the flour you are making would not be suitable to our trade." Plaintiffs immediately replied, denying right to cancel; saying both parties were bound by the foregoing order and acceptance, and that they should hold the flour until July 1st, and then, if not ordered, sell it on defendant's account, and hold defendant for the difference. On June 17th defendant again wrote, insisting on its cancellation, and declaring that it would not order the flour; and plaintiffs again replied that they would insist on the contract. After July 1st plaintiffs sold the flour at a loss of some $267. At the close of the plaintiffs' evidence, judgment of nonsuit was rendered, from which plaintiffs appeal.

For the appellants there was a brief by *Nugent & Baker*, and oral argument by *A. A. Nugent*.

For the respondent there was a brief by *Dawson & Chopin*, and oral argument by *G. H. Dawson*. They argued, among other things, that to constitute a binding contract there must be a definite proposition made on the one side and accepted on the other, and the acceptance must be absolute, unqualified, and unconditional, for if it adds conditions, however slight, it is not sufficient and no contract is made. *N. W. I. Co. v. Meade*, 21 Wis. 474; *Greve v. Ganger*, 36 Wis. 369; *Baker v. Holt*, 56 Wis. 100; *Sawyer v. Brossart*, 67 Iowa, 678, 56 Am. Rep. 371; *Rommel v. Wingate*, 103 Mass. 327; 1 Parsons, Contracts, 476; Bishop, Contracts, § 323. Defendant was not bound to notify plaintiffs of its refusal to accept their counter proposal. *Maclay v. Harvey*, 90 Ill. 525, 32 Am. Rep. 35.

Dodge, J. The plaintiffs' response to the defendant's written order contained material modifications. The specification of terms slightly different from those used in the order could have been intended for no other purpose than to modify the order; otherwise, the response need have gone no further than the expression, "We accept." That specification of terms was, first, that the flour was "to be shipped some time in June," while the order required that it should be shipped out any time between March 27th and July 1st *when ordered by the defendant*. Again, the terms of payment in the order were thirty days from shipment. Plaintiffs' response industriously insisted on their terms of a thirty-days *acceptance* without interest, to be dated the same day as the invoice and bill of lading, and to be signed and returned as soon as the car was unloaded. The distinction between an open account and an "acceptance" is material; for the word acceptance fairly implies a piece of commercial paper, which might then pass into the hands of an innocent holder and deprive defendant of defenses if any should develop within the thirty days. Thirdly, the plaintiffs'

letter imposed upon any delinquency, after the thirty days, interest at the rate of eight per cent., which was not tendered by the offer, from the terms of which only six per cent. penalty would result.

The terms of the order being substantially modified in the plaintiffs' response, that did not close a contract, but constituted merely a new offer, not binding until itself accepted. True, acceptance would readily be inferred from any conduct on defendant's part indicative thereof. Doubtless had it ordered any of the flour after receiving plaintiffs' letter, that would have sufficed; but mere silence bears no such significance, and defendant's first utterance after plaintiffs' counter offer was a withdrawal of its original order, and was inconsistent with any idea of a binding contract. There is no evidence, therefore, that the minds of the parties ever met so as to form a mutual contract of purchase and sale, either on the terms of defendant's order or plaintiffs' counter offer, and nonsuit was properly granted.

